Good morning, your honors. I'm asking that this court reconsider the decision by the I don't believe that there was a de novo at review at this time, obviously, but I believe that David Nachimovsky was seriously injured by the failure of a Nike sneaker to properly support him while he was playing basketball. He testified to that. It's sort of, if a person is hanging by a rope and that rope breaks, they don't really even need an expert to tell them that there's a problem. The rope broke. I know what happened. And I think that this case is one of those cases. There was an expert, obviously, but I think what's more important, your honor, I'll keep it brief. There was only 12 pages of discovery given by Nike in this case, 12 pages. They did not give us discovery. The, this case was during the time of COVID. We, we conducted depositions. They gave us three people, none of whom had any information about the sneaker itself or its design or its manufacture. You know, they knew the statistics of how many were manufactured, but that's all they knew. They didn't know anything about the sneaker itself. The one person that did know about the sneaker, they moved to Vietnam as soon as we started the lawsuit and they said they would produce them and they didn't. If you look at page, it's on page nine of document 43 in the record. Is this in your brief on appeal? What's that? Was this, is this in your brief on appeal? The non-production of this witness? It was not, your honor, unfortunately. It was not, but it's on page, it's on page nine, document 43 and it says, and they said that they would produce this guy and, but they never did. Okay. Then when I, when it came time to extend and to get more additional discovery and to, to get, because we really got nothing. We got 12 pages. Is your principal argument on appeal that the district court erred in excluding your expert report? My principal argument is that the district court applied a different standard to the expert. There was no motion to preclude before the motion for summary judgment. If, if there had been a motion to preclude, then they could have used a different standard with regard to the expert, but they, there was none. So the standard should have been a standard. Your expert had to be qualified, right? Well, my, well, the district court assumed that there was no CV in the file. There was a CV in the file. What evidence is there that your expert, the podiatrist, was qualified to give an expert opinion on defect, causation, et cetera? Well, Your Honor, with regard to a podiatrist giving, giving testimony as to the support of a shoe, especially when this particular podiatrist not only, not only was a podiatrist for 40 plus years, but also was a shoe designer and manufactured shoes and sneaker. By the way, Nike, you'll see in their papers, sometimes refers to it as shoe, sometimes sneaker, depending on what they want to do. I really feel that, that this expert... How many shoes, how many shoes had he designed? He, in excess of four. I, I don't know the exact number, but in excess of four. How many, how many gym shoes had he designed? One gym shoe, Your Honor. Was it a basketball shoe? It was not a basketball shoe, but what it does show you, Your Honor, is that he indicated that the bottom on that shoe was sturdy and was made, was not made for basketball. It did not have the flexibility for basketball. Did he do any research, independent research, other than trying on the shoes? Your Honor, he compared the, he compared three various sneakers in his office. He, he was, as he, as he was a person who worked with shoes intimately and, and, and made custom-made shoes, it seems that he has more than enough at least to raise a material issue of fact that should go to the jury. At least to that point, it should be something where you take a person who works with day, with feet every day, he knows what it is. I mean, he knows what a shoe is. He knows whether that shoe is providing support or not providing support. Had he ever designed a basketball shoe? He has never designed a basketball shoe. That doesn't preclude him from being able to give an expert opinion with regard to that. What did he say to explain how he arrived at his conclusion? Well, Your Honor, if, if what he, what he, what he had said was he said he had manipulated the sneaker in various ways. He had twisted it in various ways. He checked other sneakers as well. And, and, and he said this particular one, because of the cutout, there was a large cutout on the bottom of the sneaker, that cutout took away material support. In the, in the only 12 pages of, of documents that they gave to us, there were injuries to people because of the sneaker. But as you know, you know, the district court has an obligation to pay, to play a gatekeeper rule with regard to expert evidence. And it has to assess qualifications. It also has to assess the, the relationship between the opinion and the methodology that is used to arrive at it. And, and the district court is noting that these two opinions are what, one page long each? And he says he tries on the shoe, but how would you cross-examine that opinion? Well, well, Your Honor, there was no Dauber hearing. There was no hearing where they could have, if, had there been a motion for preclusion earlier, there would have been a hearing. You would have been able to test the expert. We would have been able to argue. What, what I would prefer is this. Nike proposed an expert. The, the judge dismissed it, obviously said it's no need to discuss it. But Nike's expert had no ex-, no qualifications whatsoever. And they were the, the, as the largest manufacturer in the world of sneakers, they should have an expert that knows how to design sneakers, somebody that knows whether this is providing support. The standard, the standard of review is abuse of discretion? No, it's not, Your Honor. The standard of review is de novo on a summary judgment motion. Had they brought a separate motion to preclude, it would have been different. On the issue of excluding the expert report, do we review that for? Regardless. Abuse of discretion? No, Your Honor. It's, it would be, it would be de novo because it's contained in the summary judgment. The de novo should, review should apply on the summary judgment as a whole. Had there been a motion to preclude, as a matter of fact, if you look at the Daubert lines and the other cases that come in there, there was a motion to preclude beforehand. And because of that motion to preclude, then I would. The district court precluded the expert, right? Yes. We don't review that for abuse of discretion? Well, Your Honor, if, if we were to review that for abuse of discretion, there was no Daubert hearing. There was no time where there was a focus on this particular expert to see whether the expert really is an expert or not. And after 40 plus years in practice, he could, he was clearly an expert. And the case that, the case that they used to say, well, he was, he was dismissed way back when, there was no opposition on that motion for summary judgment, Your Honor. That case was, was decided without any opposition. And all he was, was an expert. He wasn't, he wasn't a person who was going to be fighting the case. Since there was no opposition, there was nothing for, you know, there was nothing to attribute to him in that particular case. Okay. May it please the court. Max Deitchler for Appalooie Nike Inc. The court should affirm the district court's order excluding plaintiff appellants. Expert witness is inadmissible in granting summary judgment to Nike. The review of the district court's decisions whether to exclude the expert is abuse of discretion. That's stated very clearly by the second circuit in, in Ray Morena in the Amor-Guianos case, which cites Kumho-Tyre, a Supreme Court decision of the United States. And which is based on General Electric versus Joyner, where the United States Supreme Court made clear that circuit courts of appeals should have, should review district court decisions on whether to exclude an expert under the abuse of discretion standard. So I would submit that the district court did not abuse its discretion in excluding plaintiff's expert. In fact, this is the exact type of expert witness who was unqualified and the exact type of unreliable expert testimony that the district court is required to exclude under Federal Rule of Evidence 702 and under Daubert. Under Rule 702, there's a two-part test whether to exclude an expert. The first is whether the expert is, quote, qualified based on knowledge, training, education, and experience to serve as an expert at all. Plaintiff's expert in this case was not qualified. The sum total of his qualifications were that he is a podiatrist and that he has designed four pairs of shoes and those shoes were all designed for a high-end boutique in New York City and were created from an Italian manufacturer. The price range was between $900 and $1,300 for the single gym shoe that the expert claimed to have designed. And in the expert's words, it's the type of shoe designed for heavy walking with a thick sole in Europe. The subject Nike shoe was a little less than $100. It was purchased on Amazon.com and it is a basketball shoe. So designing four pairs of shoes and then that's not the requisite type of experience necessary to be qualified as an expert to opine on the design. Wasn't really also the testing or lack of testing of the subject shoe here? I mean, that the court focused on? Exactly right, Your Honor. The second part of the test plaintiff's expert also fails. That's under Rule 702, which is required to ensure that an expert's testimony testing is based on reliable principles and methods. The expert's opinion was that the medial longitudinal arch of the shoe was excessively narrow, but he admitted in his deposition that he had never even measured that part of the shoe. He didn't measure an aftermarket Dr. Scholl's insert in the shoe until he was pressed to do so at his deposition. That was the first time he had ever measured the insert, which was present on the day of the injury, that he conceded that it was different than Nike's standard insert. He admitted that his testing, which was a look, feel, and wear testing, was not a peer reviewed method. His opinions were not based on any scholarly articles. His, he produced no data, no scientific testing, along with his opinions. His opinions are completely speculative and unreliable. They're based on no scientific processes at all, and for that reason, the district court properly excluded those experts' opinions. Following, after, you know, the review of, the abuse of discretion standard applies to the court's review of the expert decision, and then after that, the de novo review applies to the summary judgment motion in general. And even if the court were to allow the expert's opinion to stand, there is no proximate causation analysis presented by the expert in the opinion, which would allow a reasonable jury to find against Nike. The expert's opinion contains no proximate causation analysis of how, even if there was a defect in the shoe, that could have caused the requisite injury to the right knee of the plaintiff. We've also demonstrated that the other claims fail because plaintiffs fail to produce evidence or even to allege facts in support of the negligence claim, design defect claim. There's no alternative feasible design, failure to warrant claim, and manufacturing defect claim. Thank you, Your Honors. We'll hear rebuttal, I guess. Rebuttal works for the issue. Oh, I'm sorry. I'm sorry. I didn't see you. You were behind the screen. Thank you, Your Honor. May it please the court, Seth Weinberg for Appellee Shoe Fitters. Obviously, we adopt all of Nike's arguments with regard to the expert in disability, and I'll just focus briefly on the one cause of action that is asserted against my client, which is negligent design defect. As we pointed out in our brief under Voss, the negligent design defect requires some level of knowledge that designs defect. If my client didn't design the shoe, they merely sold it. The plaintiff has not addressed that argument in their reply brief to date, so I don't know if he has one now, but we would submit that should this court reinstate the expert opinion and find a question of fact as to Nike, which we believe would not be correct, but should that happen, the claim against my client should still be dismissed as there is no evidence of the one claim asserted against it. If the court has no other questions, we're happy to rest on our brief. Thank you, Your Honors. Your Honors, a shoe is very much like a tire in that sense, okay? But the tire has specifications. There are all different types of specifications. Many of us know them. You have to put a certain amount of air inside. You have to have certain strength, weight bearing. Nike is manufacturing sneakers, which are tires, okay? And over here, these tires do not have warning labels. They don't have any statements saying this one is designed for basketball, this one is designed for running, this one is designed for something else. They didn't provide me with any testing or anything of what they're accusing my expert of not knowing. I didn't get any discovery that says, you know what? We checked this. This is the only way we can do a basketball sneaker. This is the way we have to do it. These are the qualifications of a basketball sneaker. These are the qualifications of a running sneaker. They provided me with nothing. They provided me with three people who were empty bags, who had no idea what the problem with the sneaker was. They weren't involved with the testing. The testing showed that there were people injured. In only six weeks of testing, there were several different people injured. What they do for testing is they just give it to high school students to use it on courts, and then they get somebody who was Dusty Buell, the person they never provided. They get him to go in and tell them what things were worn, what things were doing, how many people got hurt, what happened, but they don't disclose any of that. None of that is disclosed. You're not getting a warning label on a box of sneakers. With regard to this, there should have been a duty to warn as well. Now, with regard to whether or not this sneaker caused the injury, there was very little doubt that the sneaker caused the injury. There was no doubt because of the fact that the plaintiff testified that way. With regard to the expert, if they're willing to accept an expert and provide three experts who have no knowledge of the sneaker, are you going to disqualify a podiatrist who really does have intimate knowledge of what's going on? With regard to the standards, the real test, 702, is under review right now. It's going to be redrawn under the new guidelines. It's a question of whether the expert can really provide any input as to why this would be a cause of the injury. Daubert does not limit the type of scientific evidence that's brought in. Since there are no standards, they asked him a question. What are the standards for the arch? Well, there are no standards for that arch. It's not a tire. I think that at this moment in time, this particular case is the right one to show that there should be a duty to warn. And the last but not least, but the arch in particular, what they did was, even though he says this is under a $100 sneaker, well, tires could be under $100 also. But because they did the cutout in the sneaker to take away the support, they were going to put in a steel shank, which would provide the alternative for the cutout. What happened was that they decided as a cost cutting measure, they put in a plastic shank that doesn't have the support. Now, I don't know. I didn't have the opportunity to really depose the experts. If I did, I think we would have a much different set of documents and evidence here in front of you, Your Honors. Thank you both, and we will take the matter under advisement.